## 19298. CENTRAL OF GEORGIA RAILWAY CO. v. ADAMS.

DECIDED APRIL 10, 1929.

*H. Wiley Johnson,* for plaintiff in error.
*A. L. Alexander, F. H. O'Connor,* contra.

LUKE, J. The only question for determination is whether or not the court erred in overruling the general demurrer to the petition in this action for damages brought by Aubrey Adams against the Central of Georgia Railway Company. Omitting the formal allegations and those not necessary to a decision upon the question at issue, the petition, in substance, is as follows:

2. The Louisville Road is a main, paved highway extending

from the City of Savannah in a westerly direction across Chatham County.

3. About three miles from the city hall of Savannah, two spur-tracks, connecting the defendant's main line of railroad with the plant of the Reliance Fertilizer Company, which is located on the south side of said Louisville Road, cross said road; said spur-tracks being used for the purpose of transporting freight to and from said plant.

4. Said Louisville Road is one of the main highways of the State and is extensively traveled.

5. "At about 2:30 o'clock on the morning of March 13, 1928, petitioner was driving a Buick coupé automobile along said Louisville Road from Savannah toward said spur-tracks crossing said road."

6. Petitioner was returning alone to his home at Pooler in said State and County, after having spent the earlier part of the evening with friends in Savannah.

7. "That while on his journey petitioner was driving his automobile with care and caution at a speed not exceeding twenty or twenty-five miles per hour, owing to the fact that the night was intensely dark, foggy, and misty, and the weather inclement."

8. "That at about the hour of 2.30 a. m. on said date, while petitioner was proceeding in the careful manner aforesaid, his machine approached said spur-track crossing; and although the headlights on his machine were burning properly, owing to the said inclement weather condition petitioner did not know, and by the exercise of ordinary care could not have known, that he was in close proximity to said crossing, when in front of him at a distance of about twenty feet, petitioner suddenly beheld a train of about eleven freight-cars crossing the Louisville Road at said crossing and totally blocking said crossing, the defendant not having provided any means of warning petitioner that he was approaching said crossing."

9. "That immediately upon perceiving said freight-cars, petitioner applied the brakes on his automobile and turned to the left, attempting to go down a short road leading to the left; but although said brakes were in good condition, owing to the short distance between said automobile and said freight-cars, and the slippery condition of the road, petitioner was unable to stop said auto-

mobile in time, and struck the side of one of said freight-cars with the right front fender of his automobile, thereby throwing the right side of said automobile into violent contact with the side of said freight-car. With such force and violence did said automobile strike said box-car that the fenders and running-board ˙. . were torn off," etc. When said automobile came to a stop it was at a point about twenty-five feet from the paved road alongside of said tracks.

10. Because of the serious and numerous injuries to his car described in the foregoing paragraph, petitioner's car was damaged in the sum of $820.

11. Petitioner himself was shocked and injured by the collision in specified ways.

12. "Petitioner had no notice whatever that said train of cars was crossing the said road until he was at a distance of about twenty feet from them. There is at said crossing a signboard, which is unlighted, on the western side of the two tracks which constitute the crossing, the said train being on the more eastern track, between petitioner and said signboard, and totally obstructing his view of same. There was no light, bell, watchman, or any other means provided by defendant for apprising petitioner of his approach to said crossing, or that said train was passing over said crossing."

13. "Said spur-track is not a part of the main-line track of said defendant, and is used only occasionally and at irregular and infrequent intervals for hauling freight to and from the plant of the Reliance Fertilizer Company."

14. "Immediately after the collision, the flagman employed by defendant, whose name is unknown to petitioner, came from behind a gate leading into the yard of said fertilizer plant, which is surrounded by a solid board fence about eight feet in height, and located about thirty-five feet from said Louisville Road, with a lantern, and another member of the crew of said train, whose name is unknown to petitioner, also came up, and carried petitioner to a small building . . located near the main line tracks, a short distance from the scene of the accident." It is further alleged that the employees of defendant took petitioner shortly thereafter to the Central of Georgia Hospital.

15. This paragraph relates to the treatment of petitioner at said hospital.

Paragraphs 16, 17, 18, and 19 relate to injuries and damages.

20. "At the time of said injury petitioner was in the exercise of all due, ordinary and reasonable care, and was free from fault and negligence."

21. "The collision between petitioner's automobile and said freight-train, and the injuries which he sustained thereby, and the damage to his automobile and clothing were due entirely to the negligence of said defendant, as follows, to wit:"

(a) "It failed to have and maintain any light, bell, gong, or sign, or any signal apparatus which would, by the sounding or the sight thereof, warn persons approaching said crossing of the presence of a train, either standing upon or passing over said crossing."

(b) "It failed to have the signboard which was there placed in such a position that any one approaching said crossing from the east could see it in time to slow up or stop for said crossing."

(c) "It failed to provide a red light, or other light, which under the atmospheric conditions then and there existing would penetrate the fog and darkness sufficiently far to give timely warning to persons approaching said crossing."

(d) "It failed to hail, or otherwise warn, petitioner as he approached said crossing, and thus apprise him of the danger confronting him."

(e) "The flagman aforesaid, the servant of defendant, whose duty it was to stand in said road with a lighted lantern and warn persons approaching said crossing, had carelessly and negligently left his post, and was behind the gate leading to the Reliance Fertilizer Company's plant, where neither he nor the lantern could be seen by a person approaching said crossing, which negligence of its servant is imputed and chargeable to defendant."

The demurrer is on the grounds: (1) that the petition does not set out a cause of action, and (2) that "the allegations of the petition show that the injury and damage for which plaintiff sues were caused solely by the negligence or want of ordinary care on the part of the plaintiff."

In paragraph 19 of the petition it is alleged that the petitioner "was employed as an accountant by the Savannah Gas Company;" and in paragraph 6 it is alleged that "petitioner was returning to his home at Pooler, in said State and county, after having spent the earlier part of the evening with friends in Savannah."

Construing the petition most strongly against the pleader, it certainly could not be fairly concluded that the petitioner was entirely unfamiliar with the road he was traversing. Aside from this, however, "the night was intensely dark, foggy, and misty," so much so in fact that the petitioner, with the headlights of his automobile "burning properly," could not see a train of cars immediately in front of him at a greater distance than "about twenty feet." Notwithstanding these facts, the petitioner was driving "at a speed not exceeding twenty or twenty-five miles per hour;" the physical facts showing that though he immediately applied good brakes to his automobile and turned to the left, the momentum of the machine was so great that it struck the side of a freight-car with great force and was finally stopped twenty-five feet from the paved road, a complete wreck. Admitting as true only the allegations of fact in the petition, we can not escape the conclusion that the petioner was the author of his own misfortunes, and that the acts of negligence alleged against the defendant did not contribute to or concur with petitioner's negligence in causing the collision. See, in this connection, *Brinson* v. *Davis*, 32 *Ga. App.* 37 (122 S. E. 643) ; *Eberhart* v. *Seaboard Air-Line Ry. Co.*, 34 *Ga. App.* 49 (129 S. E. 2). The allegations of fact in the case of *Central of Georgia Ry. Co.* v. *Heard*, 36 *Ga. App.* 332 (136 S. E. 533), differentiate it from the case at bar. In our opinion the general demurrer was good, and the court erred in overruling it.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., dissents.*

BLOODWORTH, J., dissenting. In considering whether a petition is good as against a general demurrer the allegations of the petition must be considered as true; and, so considering them in this case, the writer can not say that the petition does not set out a cause of action. The material allegations of the petition are set out in the opinion of the majority of the court. The defendant can not admit all that is alleged in the petition and escape liability. These allegations are of such a character as to require a submission to the jury of the issues raised. In the petition it is alleged that the defendant was negligent in several particulars. In *White* v. *Seaboard Air-Line Railway*, 14 *Ga. App.* 139 (1b) (80 S. E. 667), this court held: "Questions of negligence are for the jury alone, and the determination of the proximate cause is involved in and

essential to the ascertainment of what negligence, as well as whose negligence, the injury is properly to be attributed to. A court can no more determine upon an issue as to what particular act or circumstance was the proximate cause of an alleged injury than it can determine that the same particular act was an act of negligence; for the jury might determine that the act which the court held was the proximate cause was not negligence, while they might be of the opinion that an act adjudged not to be the proximate cause of the injury was negligence." And see *Ga. Ry. & Power Co.* v. *Ryan,* 24 *Ga. App.* 288 (100 S. E. 713); *Davis* v. *Smiley,* 33 *Ga. App.* 508 (2) (126 S. E. 904); *Howard* v. *Savannah Electric Co.,* 140 *Ga.* 482, 486 (79 S. E. 112). In *Tenn., Ala. & Ga. Ry. Co.* v. *Neely,* 27 *Ga. App.* 493 (108 S. E. 630), Judge Hill, in discussing certain instructions which the court refused to give to the jury, said: "Such instructions would have been fatally afflicted with two infirmities, and, if given as requested, would have been reversible error. First, it has never been held in this State that it constituted negligence in one approaching a crossing over a railroad track to fail to stop, look, and listen before crossing. To the contrary, see: *Bryson* v. *Southern Ry Co., 3 Ga. App.* 407 (3), 409 (59 S. E. 1124); *Columbus R. Co.* v. *Peddy,* 120 *Ga.* 589 (5) (48 S. E. 149); *Seaboard Air-Line Ry.* v. *Blackwell,* 16 *Ga. App.* 504 (85 S. E. 686). There are many other decisions both of the Supreme Court and of this court to the same effect. Secondly, the question of negligence in such circumstances is always one for the jury, and, unless the act complained of, as negligence is negligence per se, the trial judge can not instruct the jury as to what facts would constitute negligence. This is an issue to be determined by the jury according to the facts of each particular case, without any assistance from the trial judge. Even if the decedent was negligent in approaching the railroad-crossing, there was evidence that those in charge of the train of the defendant company were also negligent in approaching the crossing, and the jury might well have found from the evidence that the defendant's negligence exceeded that of the decedent." *Whitcomb* v. *Payne,* 27 *Ga. App.* 722 (109 S. E. 703); *Bryson* v. *So. Ry. Co., 3 Ga. App.* 409 (3) (59 S. E. 1124), and cit.

In the case we are now considering, the freight-train, when the injury to the plaintiff occurred, was on a side-track which connected

the main line of railroad with the plant of Reliance Fertilizer Company. There was nothing whatever to put the plaintiff on notice, or to cause him to suspect, that a moving freight-train would be thereon at that hour of the night. The petition alleges that "the night was intensely dark, foggy, and misty," that "the defendant had not provided any means of warning petitioner that he was approaching said crossing," and that he was in the exercise of due care and free from fault, and did not know of the presence of the said freight-train until he was about twenty feet from it, and that his injuries were due entirely to the negligence of the defendant. The opinion of the majority of the court is based upon the idea that the injury of the plaintiff was caused solely by his "negligence or want of ordinary care." Under the particular facts of this case, if the plaintiff was negligent at all, he was not negligent in the manner in which he approached the crossing. Until he was within a few feet of the train he knew nothing of its presence or of the negligence of the defendant; and whether, after the negligence of the defendant came into existence and was known to the plaintiff, he could have avoided the injury was a question of fact for the jury. In *Western & Atlantic Railroad Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802), the 2d headnote is as follows: "Failure to exercise ordinary care on the part of the person injured, before the negligence complained of is apparent, or should have been reasonably apprehended, will not preclude a recovery, but will authorize the jury to diminish the damages in proportion to the fault attributable to the person injured." *Bullard* v. *Southern Railway Co.,* 116 *Ga.* 644 (3) (43 S. E. 39). In *Williams* v. *Southern Railway Co.,* 126 *Ga.* 710 (55 S. E. 948), Justice Atkinson said: "If, after the negligence of the defendant commenced, the deceased became aware thereof, or by the exercise of ordinary care should have become aware thereof, and then and thereafter failed to exercise ordinary and reasonable care and diligence for his own safety, there could be no recovery. The deceased's want of ordinary care is a question for the jury, concerning which *they are exclusive judges,* just as they are concerning the negligence of the defendant. It was for the jury to say, under the particular circumstances of this case, at what time the negligence of the defendant began. When did the deceased know of it? Or when did its existence become apparent so that, under the particular attendant

conditions, the deceased, by the exercise of ordinary care, should have known of its existence." *Central of Ga. Ry. Co.* v. *Barnett,* 35 *Ga. App.* 528 (1*b*) (134 S. E. 126). When can a demurrer to a petition be properly sustained? In *Savannah Electric & Power Co.* v. *Nance,* 31 *Ga. App.* 632 (121 S. E. 690), it was held: "Questions as to diligence and negligence, including contributory negligence and what constitutes the proximate cause of the injury, are questions peculiarly for the jury such as this court will decline to solve on demurrer except where such questions appear palpably clear." In the instant case such questions do not appear "palpably clear." "Except where a particular act is declared to be negligence, either by statute or by a valid municipal ordinance, 'the trial judge should not tell the jury what acts would constitute negligence, and what would not, but should instruct them as to the proper measure of diligence, and leave them to determine, in view of all the evidence bearing on the subject of the time, place, circumstances, and happenings, whether there was or was not a want of due care.'" *Davis* v. *Whitcomb,* 30 *Ga. App.* 497 (2) (118 S. E. 488), and cit. The facts in the case of *Central of Ga. Ry. Co.* v. *Heard,* 36 *Ga. App.* 332 (136 S. E. 533), are quite similar to the facts of the instant case. Citing a number of cases to support the position taken, the headnote of the decision in that case says: "It can not be said, as a matter of law, that the petition failed to show negligence by the defendant, nor that it affirmatively appeared therefrom that the plaintiff, if negligent, was so negligent as to be barred from a recovery, nor that the collision should be attributed to negligence on her part as the proximate cause. The petition set forth a cause of action, and the court did not err in overruling the general demurrer thereto." In conclusion the writer appropriates the words of Judge Bell in the opinion in that case, and applies them to the instant case, as follows: "From all the facts appearing, we can not say that the railway company was not negligent in at least one or some of the particulars alleged, or that the plaintiff, if negligent, was so negligent as to be barred from a recovery, or that it affirmatively appears that the accident was attributable to negligence on the part of the plaintiff as the proximate cause. It is our opinion that the averments of the petition make a case for a jury, and therefore that the superior court properly overruled the general demurrer."